IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANESSA J. HUGHES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-16-271-SPS |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, [1] ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Janessa J. Hughes requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born October 8, 1972, and was forty-one years old at the time of the administrative hearing (Tr. 46). She has a high school education, some college, and vocational training in cosmetology, and has worked as an inspector (Tr. 46, 6). The claimant alleges that she has been unable to work since July 22, 2011, due to joint pain and stiffness in her fingers, toes, knees, and spine; mild to severe swelling and "flare-ups"; low immune system; depression; stress; and psoriatic arthritis (Tr. 51, 144, 171).

**Procedural History**

On December 3, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 144-47). Her application was denied. ALJ Doug Gabbard, II held an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 25, 2014 (Tr. 19-35). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a limited range of

medium work as defined in 20 C.F.R. § 404.1567(c), [3] *i. e.*, she could lift/carry/push/pull no more than twenty-five pounds frequently and fifty pounds occasionally, and sit/stand/walk six to eight hours in an eight-hour workday with the option to alternately sit and stand every fifteen to thirty minutes throughout the workday without leaving the work station (Tr. 22). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *e. g.*, arcade attendant and booth cashier (Tr. 34-35).

**Review**

The claimant contends that the ALJ erred by failing to properly: (i) consider her non-severe affective disorder and obesity; and (ii) evaluate the opinion of physician assistant Sallee LaFave. The Court agrees with the claimant's second contention, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant's inflammatory arthritis was a severe impairment, but that her obesity, affective disorder, hypothyroidism, kidney stones, osteoarthritis, psoriasis, deep vein thrombosis, chronic pain, and back pain were non-severe (Tr. 21). The medical evidence relevant to this appeal reveals that between December 2009 and

---

[3] In his RFC assessment, the ALJ stated that he limited the claimant to light work as defined in 20 C.F.R. §404.1567(b), but then specified exertional limitations consistent with medium work as defined in 20 C.F.R. §404.1567(c) (Tr. 22). Elsewhere in the opinion, the ALJ stated he limited the claimant to medium work, but then cited to 20 C.F.R. §404.1567(a), which defines sedentary work (Tr. 34). In light of the fact that the ALJ gave great weight to the state agency physician's opinion that the claimant could perform medium work, it is apparent to the Court that the ALJ's RFC limited the claimant to medium work, and the extraneous references to light and sedentary work are typographical errors (Tr. 31).

November 2012 the claimant was regularly treated by providers at Allen Rural Family Medicine ("ARFM") for weight loss management and medication refills (Tr. 386- 458). Physical examinations at these appointments were consistently normal, and her diagnoses included, *inter alia*, depression, anxiety, rheumatoid arthritis, gastroesophageal reflux disease, hyperlipidemia, lumbar sprain/strain, osteoarthritis, hypothyroidism, and allergic rhinitis (Tr. 386- 458 ).

Beginning as early as July 2009, the claimant was treated for psoriatic arthritis at McBride Orthopedic Hospital and Clinic (Tr. 297-377, 469-96, 571-607). Through March 2013, she regularly received biologic infusion treatments which reduced her arthritic flares, but did not eliminate them (Tr. 297-377, 483-96). At a follow-up appointment on April 22, 2013, the claimant reported that her rheumatoid arthritis was "very active" and that she was generally worsening and experiencing diminishing function (Tr. 481). Dr. Robert McArthur concluded that infusion treatment had failed and prescribed biologic injection therapy (Tr. 481). At a follow-up appointment on November 19, 2013, Dr. McArthur noted the claimant was making "good progress." (Tr. 585). On July 9, 2014, Dr. McArthur noted the claimant was doing "quite well," but had some discomfort in her fingers, knees and back (Tr. 613). He referred her for a lumbosacral spine MRI which revealed early degenerative disc disease and/or facet disease at the lower three lumbar disc levels, minimal foraminal narrowing bilaterally at L4-L5 and L5-S1, and no central spinal stenosis (Tr. 608).

On December 19, 2012, the claimant established care with physician assistant Sallee LaFave, also a provider at ARFM (Tr. 383-85). Ms. LaFave treated the claimant

with medication for obesity, osteoarthritis, chronic pain syndrome, hypertension, and diabetes through March 7, 2014, the last treatment note in the record (Tr. 380-85, 501-19, 537-58). Initially, Ms. LaFave's physical examination findings were normal except for the claimant's obesity, and the claimant had no concerns apart from medication refills (Tr. 380-85, 502-03). On July 28, 2013, the claimant reported back pain, but stated that she was doing well, her medications effectively controlled her pain, and was able to conduct her daily activities (Tr. 504). On physical exam, Ms. LaFave noted midline tenderness in the claimant's cervical spine and lumbar sacral spine, but found no other abnormalities (Tr. 504-06). She indicated the claimant's chronic pain syndrome, obesity, and osteoarthritis were controlled (Tr. 506). Thereafter, the claimant had similar appointments with Ms. LaFave through December 4, 2013 (Tr. 508-19, 539-45). On January 7, 2014, and continuing for the remainder of the appointments in the record, Ms. LaFave's physical examination findings were normal (Tr. 546-58).

On October 13, 2014, Ms. LaFave completed a medical source statement ("MSS") wherein she opined that the claimant could lift/carry ten pounds frequently and twenty pounds occasionally, stand/walk less than six hours out of an eight-hour workday for an hour and thirty minutes continuously, sit less than two hours out of an eight-hour workday for an hour and thirty minutes continuously, and needed to lie down at times during the workday to manage pain and other symptoms (Tr. 622-23). She further opined that the claimant could occasionally climb, balance, stoop, kneel, crouch, crawl, reach, handle, finger, and feel (Tr. 623). As to environmental restrictions such as heights, machinery, temperature extremes, dust, fumes, humidity, vibration, etc., Ms. LaFave

stated "Patient can not physically handle these conditions. Patient is not able to work due to her pain and conditions. She has to take days of [sic] every week." (Tr. 623). As support for her opinions, Ms. LaFave noted the claimant's psoriatic arthritis diagnosis, which she stated caused flare-ups, limited mobility, and severe pain, as well as the claimant's diagnoses of osteoarthritis and degenerative disc disease (Tr. 623). Ms. LaFave indicated that her description of the claimant's limitations were applicable since she began treating her in December 2012 (Tr. 623).

At the administrative hearing, the claimant testified that her arthritis, which causes extreme pain in her back and joints, was the most significant limitation that prevented her from working (Tr. 51, 53). She further testified that her symptoms vary from day to day, but that on a "good day" she can get dressed, pack lunches for her children, get them to school, and do "maybe four hairdos" at the salon where she works twelve hours per week, and on a "bad day" she can "hardly do anything." (Tr. 52, 56). She stated she has a "bad day" every three to seven days, and that she experiences swelling in her hands and ankles on "bad days." (Tr. 56) The claimant stated that she could work full-time ten days per month, and must alternate between sitting and standing every hour and a half to two hours (Tr. 54-55).

In his written opinion, the ALJ summarized the claimant's testimony as well as the evidence contained in the medical record. In discussing the opinion evidence, the ALJ gave little weight to Ms. LaFave's MSS because: (i) it was inconsistent with her own treatment notes and the medical evidence of record, and (ii) she may have been sympathetic towards her patient and issued her opinion in an effort to avoid

doctor/patient tension (Tr. 29-31). The ALJ then gave great to the state agency physician's opinion that the claimant could perform medium work, but further required a sit/stand option in light of the claimant's testimony (Tr. 31).

Social Security regulations provide for the proper consideration of "other source" opinions such as the one provided by Ms. LaFave. *See, e. g., Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06–03p, at *4–5; 20 C.F.R. § 404.1527(c), 416.927(c).

The ALJ noted at the outset of step four that he considered the opinion evidence in accordance with SSR 06-03p, and set forth the types of sources that constitute "other sources," but made no reference to the factors in connection with Ms. LaFave's MSS, and

it is therefore unclear whether he considered any of them. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation."). This analysis was particularly important here because Ms. LaFave treated the claimant for nearly two years prior to issuing her MSS, had the benefit of the entire treatment record from ARFM, and provided the only MSS contained in the record. Furthermore, while the Court notes that the consideration given to the inconsistencies between Ms. LaFave's treatment notes and her MSS was appropriate, the ALJ's other reasons for rejecting her opinion were not legally sound. First, the ALJ stated Ms. LaFave's opinion was "not consistent with the medical evidence of record," but failed to identify any of the inconsistencies to which he was referring. *See, e. g.*, *Langley v. Barnhart,* 373 F.3d 1116, 1123 (10th Cir. 2004) ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). Additionally, there is no evidence that Ms. LaFave completed her MSS out of sympathy or that the claimant was insistent in obtaining a supportive opinion from her, as the ALJ implied. *See, e. g., Langley*, 373 F.3d at 1121 ("The ALJ also improperly rejected [the treating physician's] opinion based upon his own speculative conclusion that the report . . . was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for . . . these findings. Nothing in [the treating physician's] reports indicates . . .

that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*'"), quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) [emphasis in original].

Because the ALJ failed to properly consider the "other source" evidence provided by Ms. LaFave, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 15th day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**